**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kathy M. Hill, ) | No. CV-04-1639-PHX-NVW |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| Jo Anne B. Barnhart, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

The Court has before it Plaintiff's Motion for Summary Judgment, Doc. #17, Plaintiff's Statement of the Case and Statement of Facts, Doc. #18, Defendant's Cross-Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment, Doc. #24, Defendant's Statement of Facts, Doc. #26, and Plaintiff's Reply to Defendant's Response Motion, Doc. #29.

Plaintiff Kathy M. Hill ("Hill") brought this action against the Commissioner Of Social Security ("Commissioner") alleging that her application for Disability Insurance Benefits ("DIB") and period of disability was wrongfully denied. Hill now moves for reversal of the decision below and a remand for a new hearing or an award of benefits. The Commissioner cross-moves for summary judgment.

## I.  Background

Kathy Hill ("Hill"), age fifty-one at the time of the hearing before the Administrative Law Judge ("ALJ"), has approximately a tenth-grade education, and her past work experiences include working as an office sales manager and as a fascimile technician. Hill ceased working on April 16, 1999.

Hill sought treatment for her migraines and seizures from three different doctors. She saw Dr. Ferer between March 1999 and April 1999, Dr. Rosenthal between May 1999 and September 1999, and Dr. Reeck between November 1999 and December 2002. Dr. Ferer ordered an MRI of Hill's brain and an electroencephalogram. Plaintiff's Statement of the Facts ("PSOF") at ¶¶ 4, 7. Neither test revealed any abnormalities. *Id.* at ¶¶ 6, 7. Dr. Rosenthal ordered a contrast MRI and MRA, which revealed that an artery was traversing Hill's brainstem in a diagonal direction, rather than moving directly at the brainstem in the midline. *Id.* at ¶ 10. Dr. Rosenthal stated that she was "uncertain as to the significance of this finding." *Id.* The doctors prescribed a variety of drugs in an attempt to control Hill's migraines and seizures.

In August 2000, Hill filed a claim with the Social Security Administration ("SSA"), asking for a period of disability and for Disability Insurance Benefits ("DIB"). Hill alleged that she became disabled on July 28, 1999. The claim was denied initially by the SSA, denied again after reconsideration by the SSA, and also denied by the Arizona Disability Determination Service. Hill then requested a hearing before an ALJ, which was held on December 19, 2002. In his Notice of Decision, the ALJ concluded that Hill had a history of carpal tunnel syndrome in both upper extremities, migraine headaches, and a seizure disorder. Tr. at 32. He also concluded that Hill could still perform her past work as an office sales manager, and therefore she was not disabled within the meaning of the Social Security Act. On June 27, 2004, the Appeals Council denied Hill's Request for Review, adopting the ALJ's findings as the final decision of the Commissioner. Hill appeals the ALJ's findings in this court.

1  Hill asserts that the ALJ erred in determining that Hill's testimony about her migraines
2  and seizures was not credible, and also claims that the ALJ improperly disregarded the
3  medical opinion of Dr. Reeck, her treating physician. The court addresses both arguments.

**I.  Standard of Review**

The court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). In its review, the court "may set aside a denial of disability benefits only if it is not supported by substantial evidence or if it is based on legal error." *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citations omitted); *see Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995) (citations omitted). Such evidence is "more than a scintilla" but "less than a preponderance." *Smolen*, 80 F.3d at 1279 (citations omitted). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

**III.  Legal Standard**

Part 404.1520 of the Code Of Federal Regulations describes the five-step sequential evaluation process used in determining whether a claimant is disabled. The five steps are 1) whether the claimant is currently working, 2) whether the impairment is severe, 3) whether the impairment meets or equals an impairment in Appendix 1 of Subpart P of the regulations, 4) whether the claimant can perform work performed in the past, and 5) whether the claimant has the ability to perform other work. 20 C.F.R. § 404.1520(a)(4)(i-v). The questions are addressed in order; certain responses to these questions will lead to automatic eligibility or ineligibility. *See id.* The ALJ in Hill's case made his decision at step four of the analysis by determining that "claimant's medically determinable impairments do not prevent the claimant from performing her past relevant work." Tr. at 33. At the fourth step, the burden is still on

1 the claimant to demonstrate that she is disabled. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## IV.     Credibility Determinations

At the hearing, when referring to Hill, the ALJ stated that "[i]f I accept all of her testimony, I would have to find that she cannot work." The ALJ cited objective medical tests, doctor notes and statements, the fact that Hill could perform some household chores, and damaging testimony as reasons to discount the credibility of Hill's testimony about the severity of her migraines and seizures and the limitations caused by them. The ALJ therefore concluded that Hill could still perform her past job as an office sales manager.

In weighing a claimant's credibility, the ALJ may consider various factors, including the claimant's daily activities, the claimant's reputation for truthfulness, inconsistencies either in her testimony or between her testimony and her conduct, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284. If the ALJ finds particular testimony of the claimant not credible, he must provide clear and convincing reasons for rejecting it. *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[A]bsent affirmative evidence of malingering, an ALJ cannot reject a claimant's testimony without giving clear and convincing reasons.")(citations omitted). The ALJ also "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).

### A.     The ALJ's Evidence Questioning Hill's Credibility

#### 1.     Medical Tests

The ALJ cited medical tests performed on Hill–x-rays, an electroencephalogram, MRIs, and an EEG–as evidence supporting his conclusion that Hill's migraines and seizures were not as severe as Hill testified, stating that those tests did not "explain the claimant's

alleged migraine headaches and accompanying seizures and visual disturbances." Tr. at 27. Hill argues that the ALJ improperly relied upon these medical findings because "objective findings are not required when there simply can be no objective verification of a particular medical condition." Doc. # 19 at 4. While objective findings of a medical impairment may not be necessary to demonstrate a condition, an ALJ may still use objective evidence to assess the intensity and persistence of a claimant's symptoms. *See* 20 CFR § 404.1429(c)(2)("We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."). *See also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001)("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."). The ALJ did not rely solely on objective medical findings to discount Hill's credibility, and therefore properly used Hill's medical tests as a reason to discount her credibility.

### 2.  **Dr. Rosenthal's Statement**

The ALJ also cited a statement by Dr. Rosenthal as a reason to discount Hill's testimony. Specifically, the ALJ stated that "the claimant's own treating physician, J.L. Rosenthal, M.D., indicated that he had serious doubts about he claimant's credibility with regard to her migraine headaches, seizures, and visual disturbances as MRI's and EEG's showed no physical explanations for her symptoms." Tr. at 27. After evaluating Hill a second time, Dr. Rosenthal provided in her report that "[i]t is somewhat possible that these are factitious symptoms, or exaggerated symptoms . . . ." Tr. at 27.

Hill argues that Dr. Rosenthal's statement about factitious or exaggerated symptoms pertained only to her seizures, and was thus not a general statement about her migraines. Hill's interpretation of Dr. Rosenthal's statement appears correct – Dr. Rosenthal engaged in

- 5 -

1  an illness-by-illness analysis of how Hill's medical conditions should be treated. Dr.
2  Rosenthal had already concluded her section discussing treatment for Hill's chronic, mild
3  headaches and her section devoted to Hill's frequent migraines before she began discussing
4  Hill's seizure episodes. It was at the end of the report, where Dr. Rosenthal was still
5  discussing Hill's seizures, that Dr. Rosenthal stated that Hill's symptoms may be factitious
6  or exaggerated. There is no indication that Rosnethal's statement was made in reference to
7  Hill's migraines. However, Rosenthal's statement, as a treating physician, is relevant in
8  evaluating the severity of Hill's seizures.

### 3. Dr. Reeck's Statement to Dr. Kahn

10 The ALJ cited a conversation between Dr. Kahn, a state employee, and Dr. Reeck
11 as a reason to discount Hill's credibility. According to the ALJ, Dr. Reeck told Dr. Kahn that
12 Hill's "seizure disorders were well controlled with the use of medications by September 2000
13 and that they should not pose a significant problem for her." Tr. at 27. See Tr. 250 for Dr.
14 Kahn's statement. Dr. Kahn also noted that Hill had not seen Dr. Reeck for nearly nine
15 months. Hill argues that Dr. Reeck's statement, if it even occurred, only establishes that
16 Hill's seizures were under control and has no bearing on Hill's migraines. Kahn's report
17 makes no reference to Hill's migraines other to say that "the seizures may be a manifestation
18 of the migraine headaches." *Id.* Hill therefore correctly argues that Reeck's statement only
19 addressed the severity of Hill's seizure episodes. However, the fact that Hill had not seen Dr.
20 Reeck in nine months is probative in determining the credibility of Hill's testimony regarding
21 the severity of both her seizures and migraines.

### 4. Hill's Daily Activities

23 The ALJ cited the hearing and Hill's Activities and Daily Living Questionnaire as
24 evidence that Hill could still perform many daily activities, including light housekeeping,
25 making beds, watering plants, cooking meals, washing dishes, dusting, washing clothes,
26 vacuuming, decorating her home, performing light gardening, and visiting frequently with
27 relatives. Tr. at 31. Hill argues that the ALJ's statement failed to acknowledge or mention
28 that at the hearing and on the Questionnaire, Hill provided specific, limiting information

- 6 -

1   about her ability to perform those daily activities. Hill's argument is circuitous. The ALJ
2   cited Hill's performance of numerous daily activities as a reason supporting his conclusion
3   to discredit Hill's testimony about the severity of her migraines and the limitations caused by
4   the conditions. This is precisely the testimony that Hill is arguing the ALJ did not include
5   when he discussed Hill's ability to perform daily activities. But the ALJ did not include that
6   testimony because he did not believe it. Instead, the ALJ focused on the fact that Hill
7   performs a number of daily activities. The correct inquiry therefore is whether the ALJ
8   improperly cited the fact that Hill could perform daily activities as a reason discounting her
9   credibility.

10   It is proper for an ALJ to consider a claimant's daily activities. *Burch*, 400 F.3d at 681
11   ("The ALJ was permitted to consider daily living activities in his credibility analysis.").
12   However, the fact that a claimant can perform some daily activities does not mean that she
13   is not disabled. *Vertigan*, 260 F.3d at 1050 ("This court has repeatedly asserted that the mere
14   fact that a plaintiff has carried on certain daily activities, such as grocery, shopping, driving
15   a car, or limited walking for exercise, does not in any detract from her credibility as to her
16   overall disability. One does not need to be 'utterly incapacitated' in order to be disabled.").
17   The *Vertigan* court reversed the ALJ's decision because the ALJ discounted the claimant's
18   testimony by citing only the claimant's daily activities. In this case, the ALJ treated the fact
19   that Hill can perform some daily activities as one factor, *see Smolen*, 80 F.3d at 1284,
20   supporting his ultimate conclusion that Hill was not disabled. While not overly probative on
21   the question of Hill's credibility, the fact that Hill performs some daily activities supports the
22   ALJ's conclusion to discredit Hill's testimony.

23   **5.   Hill's Testimony**

24   The ALJ also explained that he discounted Hill's credibility because she testified, at
25   the hearing, that she quit her job because her husband retired and because she needed to take
26   care of him. Tr. at 32. In addition, Dr. Armstrong recorded Hill as stating that she "[q]uit
27   when her husband retired and they moved to Arizona, 'plus I had carpal tunnel surgery and
28   started having seizures.'" Tr. at 291. On redirect by Hill's attorney, Hill stated that the

1  migraines and seizures would have prevented her from working even if her husband had not
2  retired. Tr. at 382. The ALJ suggested that the motivating reason behind Hill's request for
3  DIB was that her ailing husband needed someone to care for him at home. In this
4  proceeding, neither party has addressed this reason provided by the ALJ.

5       **B.**     **Clear and Convincing Reasons**

6  As discussed above, when an ALJ does not believe a claimant's testimony, the ALJ
7  must demonstrate that there is clear and convincing evidence for reaching such a conclusion.
8  In this case, while some of the ALJ's proffered reasons for discounting Hill's credibility are
9  not too persuasive, many others support his conclusion. In particular, the ALJ has cited
10 objective medical tests that failed to corroborate the severity of Hill's condition, Dr.
11 Rosenthal's statement that the seizures may be factitious or exaggerated, Dr. Reeve's
12 statement to Dr. Kahn that Hill's seizures were controlled, the fact that Hill performs some
13 daily activities, and testimony hinting that the reason behind Hill's request for disability is
14 because she wants to be at home with her husband. Furthermore, "[w]e give great weight to
15 an ALJ's credibility assessment." *Brawner v. Secr'y of Health and Human Serv.*, 839 F.2d
16 432, 433 (9th Cir. 1988). Because the ALJ has articulated clear and convincing reasons for
17 his conclusion that Hill's testimony regarding her pain and limitations was not fully credible,
18 he has satisfied the standard articulated in *Vertigan*.

19 **V.**     **Dr. Reeck's Medical Opinion**

20 Hill asserts that the ALJ did not accord Dr. Reeck's statement, that of a treating
21 physician, proper weight. "[W]here the treating doctor's opinion is not contradicted by
22 another doctor, it may be rejected only for 'clear and convincing' reasons." *Lester*, 81 F.3d
23 at 830. The ALJ must set forth his conclusion in proper detail. *Embrey v. Bowen*, 849 F.2d
24 418, 422 (9th Cir. 1988). Because the ALJ did not identify any other doctors' conflicting
25 opinions regarding Hill's alleged disability, he must therefore demonstrate that he had clear
26 and convincing reasons for disregarding Dr. Reeck's medical opinion.

27 On December 18, 2002, Dr. Reeck submitted a statement to the ALJ in which he
28 stated that he was Hill's primary caregiver and that Hill's headaches "have been severe and

frequent to the extent that regular and reliable work has been problematic." Tr. at 316. The ALJ provided three reasons why he disregarded Dr. Reeck's medical opinion: (1) objective evidence did not support Dr. Reeck's opinion; (2) a conversation between Dr. Reeck and Dr. Kahn, a state employee, on May 1, 2001, during which Dr. Reeck informed Dr. Kahn that he last saw Hill in September 2000 and that Hill's seizures were controlled and not a significant problem; and (3) Dr. Reeck's progress notes about Hill's doctor visits, which failed to support Dr. Reeck's December 18, 2002 medical opinion.

### A. Objective Medical Evidence

An ALJ cannot reject a doctor's medical conclusion solely because there is no objective medical evidence of the impairment. *See Embrey*, 849 F.2d at 421-22 (determining that an ALJ erred in disregarding a doctor's conclusion about Embrey's condition when the ALJ relied on a lack of objective evidence to support the doctor's conclusion). Furthermore, "[t]he subjective judgments of treating physicians are important, and properly play a part in their medical evaluations." *Id.* at 422. Therefore, the ALJ cannot properly disregard Dr. Reeck's testimony based solely on the fact that objective evidence fails to support his medical opinion.

### B. Dr. Reeck's Statement to Dr. Kahn

As discussed above, Dr. Kahn contacted Dr. Reeck to discuss Hill's medical condition. In his report, Dr. Kahn wrote that Dr. Reeck "feels [the] seizure condition is controlled and not a significant problem. [He] [a]lso tells me [that] the seizures may be a manifestation of her migraine headaches." Tr. at 250. Dr. Kahn also wrote that Dr. Reeck had not seen Hill since September 2000. Tr. at 250. The ALJ interpreted Dr. Kahn's report as showing that Dr. Reeck "believed that the claimant's headaches were not severe enough to prevent her from working." Tr. at 27. Dr. Kahn made only vague reference to Hill's migraines when Dr. Kahn wrote that he contacted Dr. Reeck to discuss Hill's "medical condition," and when he wrote that Dr. Reeck informed him that Hill's migraines may be causing her seizures. While Dr. Kahn's report primarily focused on Hill's seizures, the fact that Hill had not sought

medical attention in nearly nine months is probative in determining the severity of Hill's migraines.

### C. Dr. Reeck's Progress Reports

The ALJ cited three exhibits–Exhibit 8F, 13F, and 16F–as evidence supporting his decision to reject Dr. Reeck's December 18, 2002 medical opinion. Tr. at 27. Because all three exhibits are progress reports from Dr. Reeck, they will be treated together. In the three exhibits, there are a total of twelve progress reports written by Dr. Reeck. In five of the progress reports, Dr. Reeck discussed Hill's migraines and seizures. In the other seven progress reports, Dr. Reeck only discussed the reason why Hill came in for a visit, such as a follow-up visit for a hurt knee, a twisted ankle, lower-extremity swelling, high cholesterol, or the flu. Even though the ALJ's decision does not clearly articulate why he pointed to these three exhibits as evidence not in accord with Dr. Reeck's Dec. 18, 2002 diagnosis, presumably he believed that Dr. Reeck's failure to mention the migraines and seizures in every meeting demonstrated that those two conditions could not be too severe.

The fact that Hill sought treatment from her primary-care physician for medical conditions other than seizures and migraines is not dispositive on the question of the severity of her migraines and seizures. However, the fact that Hill only sought medical consultation for those two conditions on five occasions over a period of nearly three years undermines the severity of the alleged impairments, and also undermines Dr. Reeck's conclusion that Hill could not perform regular and reliable work. For example, other plaintiffs alleging disabling migraines have produced much more extensive medical history of doctor visits. *See, e.g.*, *Giles v. Barnhart*, 368 F. Supp.2d 924, 926-939 (N.D. Iowa 2005)(plaintiff continually sought medical attention for her migraines); *Ash v. Sullivan*, 748 F. Supp. 804, 806-07 (D. Kan. 1990)(plaintiff sought emergency room treatment for her headaches on an average of four times a month). While Hill did not need to visit Dr. Reeck with the frequency of the plaintiffs in *Giles* or *Ash,* the presence of only five visits over three years during which Hill's migraines or seizures were discussed does not support Dr. Reeck's medical opinion that Hill could not perform regular and reliable work.

### D. Clear and Convincing Standard

In sum, the three reasons that the ALJ provided supporting his conclusion to reject Dr. Reeck's medical opinion–a lack of objective medical evidence, Dr.Kahn's notes about a conversation between Dr. Reeck and Dr. Kahn regarding Hill's seizures, and Dr. Reeck's progress reports that did not make reference to Hill's migraines or seizures–satisfy the standard enunciated in *Embrey*. 849 F.2d at 422. The ALJ properly relied upon the objective medical tests as evidence undermining Dr. Reeck's December 18, 2002 medical opinion because the ALJ did not solely rely on those medical tests in making his decision to disregard the opinion. In addition, Dr. Kahn's progress notes support the ALJ's decision to disregard Dr. Reeck's opinion because he told Dr. Kahn that the seizures were under control and that Hill had not sought medical attention in approximately nine months. Finally, Dr. Reeck's progress notes reflect that Hill only sought medical attention for her migraines and seizures five times in three years. These progress notes clearly undermine Dr. Reeck's opinion as to the severity of Hill's seizures and migraines. The ALJ provided the necessary detail for the court to evaluate his decision. In addition, he provided clear and convincing reasons for his decision to disregard Dr. Reeck's December 18, 2002 medical opinion that Hill could not perform regular and reliable work.

### VI. Substantial Evidence

The only inquiry left before the court is whether the ALJ's decision "is supported by substantial evidence." *See Jamerson*, 112 F.3d at 1066. Hill's argument for why the ALJ did not have substantial evidence rested on her assertions that the ALJ improperly discredited Hill's testimony and disregarded Dr. Reeck's medical conclusion that Hill could not sustain regular and reliable work. Hill's assertions are incorrect, and as discussed in the preceding two sections, the ALJ had clear and convincing reasons for his decision to discredit Hill's testimony and to disregard Dr. Reeck's December 18, 2002 medical opinion. The ALJ provided numerous reasons–objective medical evidence, Dr. Reeck's progress notes, Dr. Kahn's notes, Dr. Rosenthal's statement that Hill's seizures may be factitious or exaggerated, Hill's testimony regarding the reason she quit her job, and her daily activities–supporting his

1  conclusion that Hill was not disabled. Hill has not provided any additional legal arguments
2  for her position that the ALJ did not have substantial evidence supporting his conclusion;
3  therefore, the ALJ had substantial evidence supporting his decision that Hill was not disabled
4  within the SSA.

5      The ALJ's decision is affirmed.

6      IT IS THEREFORE ORDERED that plaintiff Hill's Motion for Summary Judgment,
7  Doc. #17, is denied.

8      IT IS FURTHER ORDERED that Defendant's Response to Plaintiff's Motion for
9  Summary Judgment and Cross-Motion for Summary Judgment, Doc.# 24, is granted. The
10 clerk is directed to terminate this case.

11     IT IS FURTHER ORDERED that the clerk enter judgment in favor of Defendant and
12 that Plaintiff take nothing.

13     DATED this 23rd day of November, 2005.

                                            Neil V. Wake
                                    United States District Judge